UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JORGE IBARRA-PEREZ,

        Petitioner,

v.                                CASE NO. 5:08-CV-11100
                                   HONORABLE JOHN CORBETT O'MEARA

MILLICENT WARREN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY
AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.**     **Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Jorge Ibarra-Perez ("Petitioner") was convicted of two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520(b), following a jury trial in the Wayne County Circuit Court in 2003 and was sentenced to concurrent terms of 10 to 20 years imprisonment. In his pleadings, Petitioner raises claims concerning the identification procedures, the sufficiency of the evidence, and the effectiveness of trial and appellate counsel. Respondent, through the Michigan Attorney General's office, has filed an answer to the petition contending that it should be denied. For the reasons set forth herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

**II.**     **Facts and Procedural History**

Petitioner's convictions arise from the sexual assault of a 15-year-old girl in Romulus,

1

Michigan on September 8, 2002. The Court adopts the statement of facts contained in Petitioner's brief on direct appeal in the state courts, insofar as those facts are consistent with the record, as Respondent has done the same and not disputed them. *See Dickens v. Jones*, 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002); *see also Bland v. California Dep't. of Corrections*, 20 F.3d 1469, 1474 (9th Cir. 1994). Those facts, as slightly edited by the Court, are as follows:

> Defendant was charged with two counts of first-degree criminal sexual conduct. Prior to trial, the court denied a motion to suppress the on-the-scene identification, delayed ruling on a request for an independent DNA analysis, and granted a bond reduction.
>
> The following witnesses testified at trial: Charles Cole, Amy Soard, Romulus Police Sergeant Clifford West, Romulus Police Officer Rick St. Andre, Romulus Police Officer Donald Smith, Romulus Police Officer Richard Balzar, William Quinn, Shelley McKay, Romulus Police Sergeant Duane Smith, Romulus Police Officer Darrin Wright, Romulus Police Officer Carolyn Huggins, Heather Spillane, Crystal Ferriss, Romulus Police Lieutenant Jeffrey Keefer.
>
> Mr. Cole testified he was returning home from work at approximately two o'clock in the morning when he saw a half naked girl running down street, that the area is dimly lit, that he stopped to assist her, that he called the police, that he took her to a local gas station, that he was present when the police arrived approximately 10 minutes later, that the girl appeared scared and frightened, that he was present when the officers brought a suspect to the gas station, that the girl identified that person, that he did not see anyone else in the area, and that he was not sure of the time he saw the young woman. (II, 48-40).
>
> Ms. Soard testified she lived in the area, identifying where she lived on a diagram, indicated there were no streetlights in the area, that on the night in question she was outside on her porch when she heard some yelling, but was unable to tell whether it was a male or female voice, that she was able to see a female followed by a male, wearing a light colored shirt, that she did not see anyone else, that she was later interviewed by the police, that she did not inform the officer the man was Hispanic, although it was included in the report, and that she was unable to identify anyone. (II, 41-59).
>
> Sergeant West testified that as he was responding to the location, he came into contact with defendant, dressed in black, who was walking down the road, that the contact occurred within five minutes of receiving the call, that defendant's face appeared to have fresh scratches, that there appeared to be grass and weeds

2

on his clothing, that it appeared he had been drinking, that defendant was transported to the gas station for possible identification, that the complaint started screaming when she saw defendant, that a report was prepared, that there appeared to be hair follicles on his collar, that defendant's clothing was confiscated at the police station. (II, 60-86).

Officer St. Andre testified to transporting defendant to the hospital for the purpose of taking blood and hair samples. (II, 91-93).

Officer Smith, evidence technician, testified he and Officer Blazer responded to the gas station, observed complainant who appeared to be upset, that she was naked from the waist down, that he broadcast information about a possible suspect, that he was present when defendant arrived, that the girl identified defendant as the person, that subsequently he discovered some clothing in the area, he identified various photographs of the area, was present when the scene was processed, the photographs also depicted where the clothing was located, as well as the injuries sustained by the victim, that he also took samples from underneath the victim's fingernails, which was done after she had been examined by the doctor and nurse, that the victim appeared to be intoxicated, that he was unable to locate any footprints at the scene, that the broadcast report included a physical and partial clothing description. (II, 94-130).

Officer Balzar testified to also responding to the location, that he talked to the victim, who appeared frightened and scared, that she also had cuts on her face, that she appeared to have been drinking, that a report was prepared, that the description of the individual included race (Hipsanic) as well as clothing (all black), that when defendant arrived on the scene, she appeared frightened and wanted him to go away, and that a statement was taken from her at the hospital after she had been examined. (II, 130-139).

Mr. Quinn, registered nurse, testified to taking a blood sample as well as hair samples from defendant pursuant to a search warrant (II, 139-141).

Ms. McKay, registered nurse, testified to examining the victim and processing samples pursuant to a standardized 'rape kit', that she noticed there appeared to be dirt under the victim's fingernails, that the victim indicated a bracelet was missing, identified various photographs of the victim, noting that her clothing was dirty and grassy, that a test indicated an alcohol level of .19, that the whole interview process last approximately 45 minutes, and that complainant was not asked to write out a statement (II, 142-153).

Sergeant Smith testified he searched defendant at the police station, removing a bracelet from his pants pocket, that defendant's face appeared to be scratched, and identified various photographs of defendant. (III, 5-12).

3

Officer Wright testified to securing the possible crime scene, and to taking photographs of clothing at the scene. (III, 13-17).

Officer Huggins testified to responding to the area, locating and securing potential evidence at the scene, and identifying same. (III, 17-25).

Ms. Spillane, an expert in forensic science as well as DNA analysis, testified to performing a DNA test of the material recovered from complainant's fingernails, that it appeared to have degraded, resulting in an incomplete profile, but that the results were sufficient to positively exclude both the victim and defendant as a source material. (III, 26-64).

Ms. Ferriss, 15 years of age, testified that on the night in question she had gone to a party where she was drinking, that she was wearing jewelry, that she had gotten sick and had thrown up, that when she left she thought she would go to a friend's house, but was unfamiliar with the area. As she was walking down a road, she became aware of someone behind her, that she kept telling the person to go away, identified defendant, and said that as she tried to run she was caught and wrestled with the person on a dirt road, that shw was screaming and was able to scratch his face, that her fingernails were short, that her jeans were taken off, identified the clothing she had been wearing, said that he inserted his fingers as well as his penis in her vagina, that she was able to free herself and ran to a house where she knocked in a door. Getting no answer, she continued down a road, where she saw another person who let her into his vehicle and was taken to a gas station. When the police arrived she was able to talk to them, and was then taken to the hospital where she was examined, she indicated the injuries she suffered, that defendant appeared skinnier than he was on that night, admitted she was unable to remember much of what had happened that evening because of her drinking, testified at the preliminary examination that she was unable to see his face, and the first time she discovered her bracelet was missing was at the hospital. (III, 66-108).

Lieutenant Keefer testified that he noticed what looked like fresh scratches on defendant's face shortly after his arrest, that defendant at the present time looked like he had lost a lot of weight, that there was a positive identification of defendant by complainant within minutes of the response, and that defendant was not weighed at the time of his arrest. (III, 108-114).

The prosecution rested. (III, 114). A motion for directed verdict was denied. (III, 115). The defense rested. (IV, 8).

Pet. App. Brf., pp. 2-6.

At the close of trial, the jury found Petitioner guilty of the charged offenses. The trial

4

court subsequently sentenced him to concurrent terms of 10 to 20 years imprisonment.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the identification procedures and the sufficiency of the evidence. The court affirmed Petitioner's convictions. *See People v. Ibarra-Perez*, No. 248738, 200 WL 2601743 (Mich. Ct. App. Nov. 16, 2004) (unpublished). Petitioner's application for leave to appeal with the Michigan Supreme Court was denied in a standard order. *See People v. Ibarra-Perez*, 472 Mich. 940, 698 N.W.2d 397 (2005).

Petitioner subsequently filed a motion for relief from judgment in the state trial court raising claims concerning the effectiveness of trial and appellate counsel, which was denied. *See People v. Ibarra-Perez*, No. 02-11705-01 (Wayne Co. Cir. Ct. March 1, 2007). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitled to relief under MCR 6.508(D)." *See People v. Ibarra-Perez*, No. 278523 (Mich. Ct. App. Dec. 14, 2007) (unpublished). Petitioner's application for leave to appeal with the Michigan Supreme Court was similarly denied. *See People v. Ibarra-Perez*, 481 Mich. 913, 750 N.W.2d 191 (2008).

Petitioner thereafter instituted this federal habeas action, raising the same tainted identification procedure, insufficient evidence, and ineffective assistance of trial and appellate counsel claims presented to the state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that habeas relief should be denied because the claims lack merit and/or are barred by procedural default.

## III. Analysis

### A. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B.  Identification Procedure Claim**

Petitioner first asserts that he is entitled to habeas relief due to tainted identification

procedures. Specifically, he asserts that an on-scene identification by the victim was improperly conducted in the absence of counsel and that the identification procedure was unduly suggestive because he was the only person viewed by the victim. Respondent contends that these claims lack merit.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive. If so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation;
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers*, 409 U.S. at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. If a defendant meets this burden, then the prosecutor must demonstrate that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240 n. 31 (1967); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicate that

8

the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Johnson*, 344 F. Supp. 2d at 1090.

Petitioner first asserts that his rights were violated by the absence of counsel during the on-scene identification. The Michigan Court of Appeals denied relief on this claim finding that counsel is not required at an on-scene identification. That decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. An accused's right to have counsel present at a pre-trial identification procedure only attaches to lineups conducted at or after the initiation of adversarial judicial criminal proceedings. *See Moore v. Illinois*, 434 U.S. 220, 227-28 (1977). In this case, Petitioner was only a suspect when police conducted the on-scene identification; he had not been formally charged. He thus had no right to counsel during the on-scene identification. Habeas relief is not warranted on this claim.

Petitioner also asserts that his rights were violated because the on-scene identification was unduly suggestive since he was the only person viewed by the victim. The Michigan Court of Appeals denied relief on this claim finding nothing in the record to suggest that the on-scene identification procedure presented a substantial likelihood of misidentification or that the police made any improper suggestions to the victim. That decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The United States Court of Appeals for the Sixth Circuit has held that bringing crime victims immediately to the scene of the crime to identify a defendant is not impermissible or a violation of due process. *See Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir. 1989); *Stidham v. Wingo*, 482 F.2d 817,

9

818-19 (6th Cir. 1973); *see also United States v. Craig*, 198 Fed. Appx. 459, 466 (6th Cir. 2006). Prompt on-scene confrontation is actually consistent with good police work and does not offend the principles established in *Wade, supra*. *See Valtin v. Hollins*, 248 F. Supp. 2d 311, 318 (S.D.N.Y. 2003) (citing *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972)). On-scene or field identifications "are essential to free innocent suspects and to inform the police if further investigation is necessary." *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998); *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987) (on-scene confrontations allow identification "before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons").

The on-scene identification procedure used here was not improper. The victim was able to view Petitioner when he assaulted her and she spontaneously identified him at the scene, expressing no hesitation or reluctance in doing so. She also remained certain of her identification at trial. She affirmed that her identification was based upon her observations of Petitioner at the time of the incident. Her in-court identification of Petitioner was sufficiently reliable to be admissible, notwithstanding the on-scene procedure that was conducted. *See Bruner*, 875 F.2d at 535. Habeas relief is not warranted on this claim.

### C. Insufficient Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecutor presented insufficient evidence to support his convictions, namely that the prosecution failed to establish beyond a reasonable doubt that he was the perpetrator of the sexual assault. Respondent contends that this claim lacks merit.

"[T]he Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

The elements of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(f) are that the defendant "(1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration." *People v. Nickens*, 470 Mich. 622, 629; 685 NW2d 657 (2004). The prosecution must prove beyond a reasonable doubt that the accused is the person who committed the charged offense. *See, e.g., People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216, 218 (1967). In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty." *Id.* Identity may be proven by direct testimony or circumstantial evidence. *See Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich.

2002); *Kern*, 6 Mich. App. at 409. Identity may also be established by reasonable inferences arising from the evidence. *Id.*; *People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim, finding that the victim's testimony provided sufficient evidence to establish Petitioner's identity as the perpetrator of the crime and that witnesses testified that she described him in a manner which was consistent with his actual appearance. The court also noted that Petitioner's appearance was consistent with a struggle in the grass and that Petitioner had the victim's bracelet in his possession when apprehended. The court concluded that the prosecution presented sufficient evidence to support Petitioner's convictions.

The Michigan Court of Appeals' decision is neither contrary to *Jackson* nor an unreasonable application of the law or the facts. The victim's testimony established the elements of the crime – personal injury, sexual penetration, the use of force or coercion, and, most importantly for this case, Petitioner's identity as the perpetrator. The testimony of a victim alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Although Petitioner denied committing the crime, contested the prosecution's case, and argued that certain evidence (*i.e.*, the DNA results from the victim's fingernails) supported his defense, the testimony of the victim and the police indicated otherwise. It is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -

even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The Michigan Court of Appeals' determination that the prosecution presented sufficient evidence to support Petitioner's convictions was reasonable. Habeas relief is not warranted on this claim.

D. **Ineffective Assistance of Trial Counsel Claims**

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective. Specifically, he claims that trial counsel failed to obtain his own DNA expert, failed to object to the prosecutor's hypothetical questions to the DNA expert, failed to call a witness to refute the police testimony that Petitioner had scratches on his face after the incident, and failed to investigate whether DNA testing was done on other evidence or evaluate such reports. Respondent contends that these claims are barred by procedural default and also lack merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment

13

should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Alexander v. Smith*, 311 F. App'x 875, 883-84 (6th Cir. 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit). In this case, the Michigan Supreme Court relied upon a state procedural default in denying relief on these claims.[1]

---

[1]Moreover, the trial court found that the claims lacked merit and that Petitioner had not established good cause for his failure to previously raise the claims, nor establish his actual innocence, under MCR 6.506(D). The Michigan Court of Appeals denied relief pursuant to

14

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

---

MCR 6.508(D).

15

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues, challenges to the victim's identification and the sufficiency of the evidence, on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting those claims and not raising the ineffective assistance of counsel claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the court notes that Petitioner cannot establish prejudice as his ineffective assistance of trial counsel claims lack merit for the reasons stated by the trial court in denying his motion for relief from judgment.[2] *See Ibarra-Perez, supra*, slip op. at *1-6 (applying the *Strickland* standard).

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### E. <u>Ineffective Assistance of Appellate Counsel Claim</u>

Petitioner is also not entitled to habeas relief on any independent claim that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on direct appeal in the state courts. Petitioner cannot demonstrate that appellate counsel erred or

---

[2]The fact that the trial court denied relief on these claims (and found that counsel had good cause not to raise them) further supports the argument that appellate counsel was not ineffective for not raising the issues on direct appeal.

that he was prejudiced by appellate counsel's conduct given the state trial court's and this Court's determinations that his ineffective assistance of trial counsel claims lack merit. Petitioner has not shown that appellate counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

**IV.     Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his petition and that the petition for a writ of habeas corpus shall be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

When a federal court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right,

and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists would not find the Court's procedural ruling debatable. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed on appeal *in forma pauperis* are **DENIED**.

s/John Corbett O'Meara<br>United States District Judge

Date: April 29, 2010

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 29, 2010, using the ECF system and/or ordinary mail.

s/William Barkholz<br>Case Manager